The next case on the docket, 1939-56, Usman Darboe v. Merrick Garland Good morning, Your Honors, and may it please the Court, Nathan Yaffe on behalf of Mr. Darboe. This is a case about a father, a husband, a young black Muslim man who is here with some of his family today, and who received an extraordinarily rare full and unconditional pardon of his sole criminal conviction. I'll begin with the legal errors in the BIA's motion to reopen denial, which misconstrued the import of the pardon to both admissibility and discretion in determining whether to grant relief, and then I'll turn to the legal errors in the original denial. The history of applying pardons to overcome CIMT and admissibility controls here for three main reasons. First— So actually, I don't want to derail you, but my concern is that without the pardon, the BIA made very clear that pardon or no, that the adverse credibility finding that the IJ had made about evasiveness and not being willing to own up to Mr. Darboe's somewhat lengthy record of arrests, even without regard to the necklace incident that was pardoned, what was called evasiveness, and those other qualities that were evinced or that the IJ identified, that that makes clear that both the IJ and the BIA would not grant any relief that was discretionary regardless of the pardon. And so before we even get to the pardon, I need to understand why that is incorrect, because I think otherwise we don't have to get to the pardon question. Yes, Your Honor. Well, because Mr. Darboe is now admissible because of the pardon, which I understand we're bracketing, it was legal error for the BIA to adhere to their original discretionary denial because a different discretionary standard applies to a simple adjustment of status application under 245, as opposed to a 212-H application. So would the IJ or BIA not be entitled to rely on the very same things that it found here, did not warrant an exercise of discretion, putting aside the gold necklace incident, the evasiveness, the failure to deal with the protection orders, with the lengthy number of arrests and so on? What would be different about the discretion analysis now? Yes, Your Honor. Mendez-Morales explains that under 245 there is a, quote, presumption of the favorable exercise of discretion with an ordinary adjustment case such that ordinarily someone will be entitled to the favorable exercise of discretion. And it expressly said that the analytic approach under 245, and this is a quote, has no application to the 212-H relief context. Now, the error here is even worse because the immigration judge applied 1212.7d. What are the differences in the standard that would apply? How is it different? Well, Your Honor, the BIA leaves itself wide latitude in terms of what to consider, but as Your Honor explained in an opinion in Flores at 779 F3-159. I'm just trying to find out analytically, as Judge Carney was trying to get at, how would the analysis be different? You're telling us why it's different, but how would it be different? Because the analysis under 245 begins with the presumption, that's the BIA's word, that someone is entitled, who is statutorily eligible for adjustment, is going to merit the favorable exercise of discretion. So beginning with that presumption, or failing here to begin with that presumption, is an error in terms of the application of the relevant legal standard, and that's what Flores at 779. Is there anything else that's different other than beginning with the presumption? Well, Flores says that that is a legal error, and the BIA analyzes the equities differently. ACFR 1212.7d says that whereas here the immigration judge has found that there is a violent or dangerous crime, that it's only in extraordinary circumstances that the individual will merit the favorable exercise of relief. So it's hard to get more stark than that. While the BIA, as Your Honor's question indicates, has latitude in terms of what specific facts it may consider, the analytic starting point, on the one hand, of beginning with a presumption of the favorable exercise of discretion, versus on the other, as here, finding that only in the most extraordinary cases will the favorable exercise of discretion be warranted, that alone is enough for. Well, the BIA wrote, though, that in the motion to reopen, the respondent hasn't addressed the adverse credibility finding in any fashion in his motion. He has not attempted to rehabilitate his credibility, and that even without considering the conviction for which he was pardoned, the record fully supports denial of relief in the exercise of discretion, and remand is therefore not warranted. Isn't there every reason to think that remand would be futile? Well, I have a few things to say about that, Your Honor. First, the BIA also committed legal error by ignoring new positive equities in the motion to reopen and simply adhering to the immigration judge's prior discretionary denial. As what you just read indicated, the BIA wasn't conducting de novo review on discretion. It was saying that the bases for the prior negative finding still exist today. Now, that, nowhere in the BIA's analysis does it consider that the pardon itself is an extraordinary positive equity that merited consideration. Now, this Court has indicated repeatedly that failure to consider, most prominently in Mendez, that failure to consider equities that are important to a discretionary determination as positive equities is legal error that warrants remand. And the Department says this all goes to weighing, and consideration of the evidence and particularly consideration of the pardon can be presumed, but this Court's decision in Ojo v. Garland explains why that's not correct. Ojo held even if the agency is clearly aware of the relevant evidence, it must, and this is a quote, provide its reasoning for rejecting it. That's fully applicable to the BIA's offhanded dismissal of the possibility that the pardon itself, which as the Governor's brief explains, is rare, issued sparingly, and only to the most deserving of applicants, is in its own right an important positive equity, and there was also evidence in the motion to reopen of Mr. Garbo's new work achievements that was likewise ignored. Does the pardon affect the adverse credibility finding in any respect? The pardon doesn't pertain to the adverse credibility finding, but I would independently note that it was legal error for the BIA to use the adverse credibility determination as its own insurmountable hurdle to the positive exercise of discretion, absent connecting that discretionary determination to some conduct on the part of Mr. Garbo. And this is somewhat like BIA's decision in matter of Pula, where it distinguished between using a legal determination and connecting that legal determination to the underlying conduct. It made clear that you have to focus on the underlying conduct. The BIA has said that what's relevant when engaging in the discretionary determination is- Before you run out of time, maybe you could address the other point, and that is the effect of the pardon. On admissibility, Your Honor? Yeah, so as I understand it, five circuits have held that this is different from removability. Yes, Your Honor. So the circuit opinions that you're referring to, none of them pertain to CIMT and admissibility with the exception of the 11th Circuit's decision, which I'll get to in a second. Now, with respect to the controlled substance offenses, which all except for the 11th Circuit's opinion pertain to, that's in a very different situation than we have here because Congress specifically exempted controlled substance offenses from the pardon waiver in 1956. By stark contrast, in 1954, the BIA held that in light of longstanding and acknowledged by the government practice under the pardon waiver under the 1917 Act, that Congress, in reenacting the pardon waiver without repudiating that practice in the 1952 Act, had affirmatively adopted that interpretation as part of the statute. Now, in the next session of Congress, Congress said, we don't want this to be applied to controlled substance offenses. That's a very clear expression of congressional intent to make sure that those controlled substance offenses aren't pardonable. But what we have here is not a controlled substance offense. It's a CIMT, which lies at the very heart of that practice and at the heart of the congressional ratification. And what about the 11th Circuit case you referred to? Yes, so the 11th Circuit case, as I mentioned, every other circuit is within that CSO category, which is what Congress expressly exempted from the pardon waiver. The 11th Circuit opinion in question lacks persuasive value for three reasons. First of all, the history of adjudication, the history of congressional revision, was not presented to the court, and the court didn't comment on it. So while it looked at the present-day statute and found that there was facial silence, it gave no consideration to the history. It gave no consideration to the possibility of congressional ratification. The issue wasn't even briefed by the parties, in fact. Second, that case is not persuasive and not relevant here because that actually wasn't a full and unconditional pardon. It was a purported state pardon of a federal conviction. And so the 11th Circuit sort of reached this holding as an alternative basis, saying even assuming we were to find this as a full and unconditional pardon. So the persuasive force of that decision is severely limited by its failure to consider the relevant history and the fact that it wasn't a full and unconditional pardon. What we have here with respect to ratification is just like... But you still have the absence of the language from the admissibility provision as opposed to the presence of the language in the removability provision. Yes, Your Honor, and that's true of every case in which congressional ratification is found. Now, the government has conceded that under the 1917 Act, there was a longstanding and unbroken practice. It's undisputed that in 1952, Congress reenacted the provision and in that act said nothing to repudiate the application of the pardon waiver to CIMTs. And subsequently, Congress continued to monitor the application of the pardon waiver and exempt those convictions that it wished to exempt from the application of the pardon waiver. And this is very much on all fours with Enkin Brand, where the Supreme Court considered a statute. It recognized the fact that there was no language in the present version of there, the federal diversity statute, to which the interpretation could be appended. But it said that where we have a longstanding and prominent interpretation of which Congress is aware and reenacts the statute with substantive changes but does not disapprove of that interpretation, we know that it's aware of the interpretation. It has adopted it and made it part of the statute despite the silence. I would just note that the silence in question, Your Honor, was present under the 1917 Act, which is when the government acknowledges that this practice solidified and became an unbroken practice of both the agencies and federal courts. So the fact that it has never been repudiated until today means that Congress has adopted it and it is a part of the statute despite the facial silence if you're looking at the statute today. Can I, before we lose you, just, I want to ask one final question. I want to make sure I understand. You've described the framework for exercising discretion in the context of adjustment versus in the context of a waiver of admissibility or inadmissibility as being different. The BIA says the respondent has not demonstrated his prima facie eligibility for adjustment of status inasmuch as the respondent's motion to reopen does not establish that he merits a favorable exercise of discretion. What's your understanding of which category of discretion was, or was the BIA trying to sweep both in and say whether it's in the waiver of inadmissibility or in the adjustment of status, we don't think you warrant it? Well, as we discussed in our brief, Your Honor, that is another legal error in the BIA's decision conflating the prima facie eligibility question with the discretionary relief decision. As the Supreme Court explained in Abudu, there are three options for the agency when it's denying a motion to reopen. It can say you're not prima facie eligible. It can say you haven't met the regulatory standard. Or it can say even if you're eligible and meet the standard, you don't merit the favorable exercise of discretion. Well, if what the BIA was doing was saying that you haven't changed our mind on the exercise of discretion relative to the waiver of inadmissibility, then they haven't conflated anything because they've said you're not prima facie eligible for adjustment because you're still inadmissible because you haven't persuaded us that that exercise of discretion should change. I would point out, Your Honor, that in that same paragraph that you're quoting from the BIA also says, even without considering the conviction for which Mr. Darbo was pardoned, he doesn't merit the favorable exercise of discretion. So I think the best read of the BIA's decision is that it was conflating prima facie eligibility with discretionary deservingness of relief. And that alone, under this Court's precedent, is when the BIA fails to make clear what standard it's actually applying under Elom, under Com, under Manzur, that alone is a legal error that requires remand for a sufficiently reviewable decision that makes clear what legal standard is being applied. But if it's clear to you and it's clear to everyone else that the BIA was essentially saying you don't warrant a favorable exercise of discretion as to adjustment of status, I don't understand why it would matter whether its wording was inelegant. Well, Your Honor, there are two reasons, one of which we haven't talked about today. One is that, I mean, leaving aside the not making clear the standard and applying the wrong standard, which is a third reason, the BIA ignored the positive equity of the pardon. That is an extraordinary positive equity. The governor's brief makes clear that it's granted only to the most deserving, and the BIA gave absolutely no consideration to whether or how that would factor into the balance against the negative equities. The burden for Mr. Darbo on reopening wasn't to show that the specific findings that underlay the negative discretionary determination were erroneous, although they are legally erroneous in numerous respects as we walk through in our brief, and I'm happy to discuss, but the burden was for him to show that there was a new positive equity that would change the analysis, and the BIA did not, this is not a question of weighing, it failed to weigh whether the pardon, and if so, how the pardon should be weighed against these other negative discretionary findings in light of the fact that it's an extraordinary grant of relief in recognition of Mr. Darbo's rehabilitation. Okay. I think we're going to get to hear from you again, so thank you. Thank you, Your Honor. I appreciate you answering my questions. Mr. McManus. Thank you, Your Honor. Good morning, and may it please the court, Keith McManus on behalf of the respondent. Your Honor, at the bottom of this case is about two agency determinations that resound in discretion, and as Patel and this court's longstanding precedent makes clear, the court's review of those decisions is tightly circumscribed, limited only to colorable constitutional and legal claims. Petitioner pretends that there are numerous legal errors in both the underlying denial of relief and the denial of reopening, but at bottom, his claims really challenge the agency's discretionary weighing and its underlying fact finding, both of which are unreviewable. But what's your response to his position that, you know, there is a presumption, a strong presumption on adjustment of status, that it will warrant a favorable exercise of discretion? That just creates a framework that is markedly different from the exercise of discretion in the 212H context. I mean, why would it be wrong of us to remand, to find an error, and just ask the BIA, direct the BIA to re-weigh in light of the changed circumstance, in light of the presumption, in light of the pardon? Well, there's a part missing from Petitioner's description of that framework, Your Honor, and that's the presumption only applies in the absence of adverse factors. So if there is nothing else weighing on the negative side of the ledger, then the presumption applies. But here, you have both equities and negative factors underlying the agency's decision. So on reopening, the board is simply presented with the evidence of the pardon, and it must then weigh that against the underlying decision, which was already, again, a determination that Petitioner was not entitled to leave as a matter of discretion. It doesn't seem that the board considered the pardon as a new positive equity. Well, the board's decision does say, and I think it was Judge Carney that just read from the decision, that it does not impact the adverse credibility to finding or even considering the pardon. In other words, giving Petitioner the benefit of the doubt, the board says that even without the pardoned conviction, so taking the, I guess it's the burglary of the necklace offense, out of the equation, the record still amply supports, and there are enough negative factors. You're saying that the board did consider the pardon? Absolutely, Your Honor. It actually gave Petitioner the benefit of the doubt, with respect to that discretionary weighing. It said, okay, we'll give you the pardoned conviction, which means we won't consider it as a negative factor. But it does state, I think quite clearly, that there are other adverse factors based on the record alone, and that that was enough to not change the result in this case. And again, this is about, that is in the context of reopening, and it is important to keep in mind that there are two separate and reviewable decisions here. But in terms of the denial of reopening, if the board is correct legally on, and we think it is, on the inadmissibility issue, then again this is just another discretionary decision over which the court lacks jurisdiction. And with regard to the inadmissibility issue, as Judge Chin pointed out, there are now at least five circuits, four published decisions and one unpublished, and six, if you count this court's decision in Montesquieu, that say that the plain language of the pardon waiver at 1227A2A6 controls. There is no reason to beget ambiguity in the statute when the plain language is clear. And so this court should align itself with those circuits that have readily held that because there is no comparable waiver in the inadmissibility provisions, any inadmissibility ground, whether it's CIMT or otherwise, is not subject to the pardon waiver. Do you take issue with the contention that that's a reading that is contrary to a century of prior BIA reading of that? Well, I take issue with the suggestion that it's a century's worth of precedent. But again, the point, I think, there, Your Honor, is that it's BIA precedent that doesn't actually account for the plain language of the statute. But if what happens, especially when the plain language arises, a precedent is established, Congress amends a statute, they're trying to accomplish things that we had an idea that they're trying to accomplish, we don't have any reason to think they're trying to change this particular line of authority. Is it relevant? Does the line of authority become relevant in that scenario? Ultimately, Your Honor, it's not. And if you think of it this way, that precedent, you know, really it starts with the enactment of the INA. It harkens back to the 1917 Act. But it was interpreting as the new provision in the INA that ultimately is the precursor for the current pardon waiver. And what the board did there was essentially ignore what Congress did in enacting the INA, which is just put a pardon waiver provision in the deportability grounds but leave untouched the exclusion grounds, like petitioners charged with inadmissibility here. And that line of precedent stems from this understanding that, going all the way back to the 1917 Act, generally a pardon would wipe the slate clean. It would not be used for adverse immigration consequences. But that principle has changed over the course of the last century because Congress enacted a statutory definition of conviction in 1996. The board now takes up these issues as they come to decide whether or not an expungement, a pardon, a vacature might somehow change the immigration consequences of a conviction. But more importantly, with respect to that line of debate precedent, and I think the best example of it is Matter of H, the 1954 case, or Matter of K, which I think is from later in the 50s, the determination by the board was that it could find no reason to abandon that longstanding precedent, but it didn't interpret the language of the statute. It essentially overlooked or ignored. So the precedent exists, but it was wrong. That's right. Okay. That's right, Your Honor. And the clearest indication of that is not just the five circuit courts that have ruled, you know, consistent with the plain language of the statute, but also Matter of H. Matter of H is an intervening board precedent decision, which admittedly does not address the specific circumstances we face here. It was not a grounded inadmissibility that barred discretionary relief. But the underlying decision and the reasoning that carries over from Matter of H into the circuit court decisions is that the plain language controls. Okay. And ultimately it's the courts that are the final arbiter of what the statute means. I'm sorry. Finish your thought. The BAA only has a role to play in that analysis, Your Honor, when there is actual ambiguity. And here there is none. So it's the plain language that controls that inadmissibility issue, and there would be no reason for the court to remand for any further consideration by the board. The court can decide that issue for itself. So one of the other issues in this case is in reciting the criminal history of Mr. Darbo and it informed the exercise of discretion, both the IGA and I think the BIA relied on history of arrests. And we know that many of those arrests led to youthful adjudications or other actual actions. I'm trying to figure out, I understand, so you don't need to remind me that you can always consider the conduct underlying those arrests in the discretionary determination, but in the absence of evidence and findings about the conduct underlying the arrests, when all we have is a piece of paper that tells us an arrest happened, how is that even a scintilla of evidence that's appropriate, that an officer on the street thought maybe there was probable cause, but we don't know the circumstances, it didn't lead to any further action, how is that an appropriate part of the conversation? Because, Your Honor, in weighing the question of whether someone is deserving of relief, someone's desirability as a permanent resident of the United States, the agency certainly can consider evidence of antisocial conduct that doesn't lead to any sort of criminal disposition. Right, but how is an arrest evidence of antisocial conduct? An arrest is an accusation at best, and we don't even have the record of what the accusation was, we just have the record of the charge. There's no requirement, Your Honor, that the agency sort of just ignore encounters with police. They may not be able to imbue those findings with a determination that the petitioner is guilty, and that's not what the agency did. The agency is weighing all of those factors, and again there's a handy chart in the record that lays out all the petitioner's offenses, and there's no doubt that the IJ and the Board had that at their disposal. Right, but you wouldn't recite the number of arrests unless you imbued them with some significance, right? You would focus on the things that led to an actual adjudication, or the things with respect to which you had evidence of the conduct independent of what happened in the adjudicatory process. Again, Your Honor, I think that if petitioners encountered with law enforcement, even some that occurred after he was placed in removal proceedings, that certainly can weigh into the calculus. There's nothing that precludes the agency from relying on that, and again it's not as if the agency was saying, misstating the record and saying, for example, you've been arrested 12 times when it was only 8, or that you were convicted 5 times when it was only 1, and there were youthful offender adjudications. This is not a legally erroneous assessment of petitioner's prior conduct. I'm arguing that it's legally improper, not legally erroneous, and that's what I'm trying to understand, the probative value of the recording on a piece of paper that someone was arrested, unless you have more. Unless you're just assuming that if they were arrested, they must have done something wrong. That must be the implicit assumption. My time has expired, Your Honor. May I briefly answer your question, please? Yes, please. Yes, Your Honor, that is the implicit assumption. Again, Wallace teaches that the limitation on what the agency and the court can consider in terms of the discretionary weighing is not limited to only convictions or youthful offender adjudications. These type of experiences, these encounters with law enforcement are enough to at least support that in the light of all the other evidence, and there are other discretionary factors on both sides of the ledger here, but the only question is whether the board erred in legally interpreting them, and the answer is no. Thank you. Appreciate it. Thank you. Mr. Yasky. Thank you, Your Honor. So my colleague says that the BIA precedent under the 1917 Act was wrong, but respectfully, that's irrelevant to the ratification analysis. The relevant factor is that the statute was not changed in any relevant respect that showed that Congress was disavowing this longstanding practice. It's undisputed that Congress was aware of the practice and was monitoring its application under the 1917 Act and the 1952 Act, and Congress never, despite reenacting and revising the relevant provisions multiple times, never disclaimed the application of pardons to overcome CIMT and admissibility. And regardless, because the government has acknowledged that the BIA's past precedent was wrong, and here it simply ignored that past precedent and did not explain why it was departing from it, that is textbook arbitrary and capriciousness under Yang, and remand is required for that reason alone. Now, with respect to the discretionary analysis, the government slipped in its presentation and said that the BIA in the motion to reopen was required to weigh the pardon against the other equities, but as the panel's questions have reflected, that's precisely what the BIA refused to do here. The BIA said, as the government noted, that even with that – Well, the BIA did talk about the pardon. I mean, it didn't say we consider this as a new positive equity, but there is discussion in its opinion about the pardon, which suggests that it did consider it. Yes, and, Your Honor, in Ojo v. Garland, this panel held that – a panel of this court held that when there is an important point of evidence on a particular determination, the agency must provide its reasoning for rejecting it. That's also what Mendez holds with respect to discretionary determinations. So it's not enough to simply say, oh, the agency was certainly aware of the pardon. It must explain in its discretionary analysis why it's not giving any weight to it. But it did that, didn't it? I mean, it said this doesn't affect these other considerations, which is the persistent evasiveness and failure to own up to matters as to which he was actually convicted. Your Honor, the passage that you're quoting says that it does not affect the prior negative discretionary – The adverse credibility finding. Yeah, adverse credibility finding, absolutely. But the discretionary analysis, Mendez-Morales says it is a matter of weighing, and the agency must announce the weighing and the basis of the weighing in the record, and that's also what this court's opinion in Mendez says. So it's not a question of whether the pardon rehabilitated his credibility, which was legal error for the BIA to require him to do in the first instance, but it's a question of whether the BIA said, considering these adverse discretionary factors as the IJ found them, are we going to give this positive equity, this extraordinary positive equity, of the fact of a full and unconditional gubernatorial pardon based on rehabilitation enough positive weight to outweigh those? That's different from saying it doesn't affect the prior negative findings. It's a matter of weighing it against those prior negative findings, which the BIA didn't do. He omitted an introductory clause saying even weighing the pardon against the adverse credibility finding, we find that our result doesn't change. This isn't a question of formality or preciseness in enunciation. I mean, the Mendez-Morales decision and this court's decision in Mendez says that the agency must announce the basis for its weighing, how it weighed the positive equities against the negative equities in the decision, and that's not a question of saying did the agency simply omit a clause. It's a question of whether they accorded any weight to a factor. The agency's decision here isn't clear enough to determine why it accorded no weight. All that's clear is that it did, in fact, give no weight, and that in and of itself makes it insufficient for review. As I understand your argument, the pardon not only eliminated a negative factor, but it was an affirmative, the fact that there was a pardon should be considered as an affirmative factor in its own right? Absolutely, Your Honor. And how do we, on the face of the pardon, you know, you've described sort of what the pardon signifies in terms of the findings. On its face, it doesn't seem, where do we get that that's what the pardon signifies? Where in the record? Well, Your Honor, we cited precedent in our brief from the BIA talking about the significance of pardons, so one place that you get it is from the BIA's own case law pertaining to the significance of pardons, and in addition, the pardon says that Mr. Darbo is a fit object of mercy as the governor's brief here is made clear. This reflects the fact that pardons are issued in the interest of rehabilitation, in the interest of the New York community, for people who are only the most deserving. Now, the final point that I want to just mention, because it's very important, is that the original discretionary denial was also fatally flawed by legal errors, prime among which is what Your Honor was asking about with respect to assuming the truth of arrest reports. We are not challenging that arrest reports may be considered, but it's clear from the credibility analysis and the immigration judge's recounting of Mr. Darbo's criminal history, the only way the IJ reached the specific factual findings it reached in its underlying decision was if it assumed with no supportive factual findings. It wasn't just one arrest. There were eight arrests and four convictions, as I counted. That's not true, Your Honor. I'm looking at the chart that's at the back of the special appendix, and I just counted four convictions. Some were youthful offender adjudication. Right. There were two incidents that were resolved in one youthful offender adjudication from when Mr. Darbo was a teenager. There was one disorderly conduct disposition, which is a non-criminal disposition, and then there was the incident involving the necklace, which is pardon. I guess I'm counting the youthful offender. As two separate incidents, right. And the disorderly conduct is not a criminal disposition. It's a violation. But you're right, Your Honor. But it's not just one arrest. It's eight arrests. Absolutely. But critically, Your Honor, the IJ found that after Mr. Darbo's – this is a factual finding that was flawed by the Padmore legal error that Your Honor was asking about. After Mr. Darbo's youthful offender adjudication, the IJ found that he continued to reoffend and that his crimes afterwards, his record was lengthy and serious. Now, there were four arrests afterwards. It's undisputed that two resulted in complete dismissal and one resulted in acquittal. So the immigration judge's attribution of some adult, lengthy criminal record to Mr. Darbo reflected necessarily the Padmore assumption that Your Honor was asking about, as did the adverse credibility finding, which gave as its only reasoning with respect to his arrest history that he did not admit to having done the things where cases were dismissed or acquitted. Now, both of those specific findings underlying the discretionary denial as well as the others in our brief make it subject to legal error remand as well. If there are no other questions, Your Honor.  Thank you. Thank you.